The decree is affirmed and the appeal dismissed at the cost of the appellant.

# Appeal of Bredin et al.

1. When the public is not interested, the maxim "*Nemo allegans suam turpitudinem audiendus est*" is in full force, and the law leaves the parties as they placed themselves.

2. When a deed or contract is made for an illegal purpose, a defendant against whom it is sought to be enforced, may show the turpitude of both himself and the plaintiff, and a court of justice will refuse its aid to enforce a contract thus wrongfully entered into.

3. Agreements founded on the suppression of criminal prosecutions are void, as they have a manifest tendency to subvert public justice. Stifling a prosecution of forgery comes within the rule that where the welfare of society and the vindication of the law are the chief objects, the defendant may give in evidence the illegality of the contract as a bar to a suit to enforce it; and this to prevent the evil which would be produced by enforcing the contract or allowing it to stand.

4. A judgment confessed by warrant of attorney, in consideration of stifling a prosecution for forgery is void, and it was error for the court to refuse to open such judgment and permit the defendants to show the illegal consideration, although they were parties thereto.

11 NORRIS—16

[Bredin's Appeal.]

November 21st 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ.    STERRETT and GREEN, JJ., absent.

Appeal from the Court of Common Pleas of *Butler county :* Of October and November Term 1879, No. 96.

Appeal of E. M. Bredin, Jr., and others, from a decree of the court refusing to open a judgment entered against them on a warrant of attorney, and to let them into a defence.

A. W. McCullough and P. Dorsey were oil speculators and producers.    In 1875, McCullough borrowed from Dorsey 1000 barrels of oil.    As security therefor, he gave Dorsey a check on the Citizens' Bank of East Brady for $2000, in which it was written, that the bank held 1000 barrels of oil as collateral for the check.    This check was not to be presented nor otherwise used during the continuance of the loan.    The check was endorsed, "Good, J. Y. Foster, cashier."    This indorsement and signature of Foster was alleged to have been forged by McCullough ; and for this, Dorsey made an information against McCullough for forgery.    McCullough was arrested, and indicted by the grand jury of Butler county, for forgery, in January 1878.    A jury was empanelled, and a verdict of not guilty entered on the issue joined.

The verdict was the result of an arrangement previously made by Dorsey, the prosecutor, and the appellant, the brother-in-law of McCullough, by which, in consideration of McCullough's securing $2300 to Dorsey by a note, the latter agreed not to appear as a witness against McCullough, and to keep back all other witnesses, and thus insure a verdict in favor of McCullough.    This was carried out.    Neither Dorsey nor any other witness appeared to testify. Upon the rendition of the verdict, the note of the defendants, in pursuance of such arrangement, was handed over to Dorsey, who accepted it as the consideration for suppressing the prosecution.

Dorsey entered judgment on the note, by virtue of the warrant of attorney, to September term 1878, and issued an execution thereon.    The defendants therein then presented a petition to the court, setting out in detail the history of the transaction, alleging, that the giving· of the note was against the policy of the law, fraudulent and void, and asking the court to open the judgment, let them into a defence, &c.    A rule was granted to show cause why the relief prayed for should not be granted, and depositions were taken by both parties.

The court, Bredin, J., refused to open the judgment, in an opinion, inter alia, saying :

" The evidence·is, that McCullough gave to Dorsey, as collateral security for the loan of 1000 barrels of oil, a check on the East Brady Savings Bank for $2000, purporting to be certified as "good" by J. Y. Foster, as cashier of said bank.    The oil was not returned by McCullough, and the check went to protest.    The bank refused

to pay, alleging that the acceptance was a forgery, and that if genuine, it was beyond the power of the cashier. The latter position was sustained by the Supreme Court. Dorsey having then no recourse except on McCullough, who was insolvent, indicted him for forgery, evidently as a means towards securing the debt. Dorsey claimed that McCullough owed him about $2300; McCullough admits some $1400 or $1500; but the great fluctuations in the price of oil, and the difference it would make if the oil was estimated at the price when borrowed by McCullough, or at the price when Dorsey asked its return, give room for a considerable difference in the views of the creditor and debtor, without injuring the honesty of either. We have no evidence that Dorsey used the prosecution to extort from defendants a note for one dollar more than he believed to be honestly due him from McCullough, or that he used any fraud or misrepresentation in the matter. The defendants therefore must rest their application entirely on the grounds, that part of the consideration of the note on which judgment was confessed, was the settlement and stifling of the criminal prosecution, and that, being against public policy, renders the note void. If this was a suit on a note or bond, the defence could be set up, '*Ex turpi causa non oritus actio.*' But here the defendants are the actors, they apply to open a judgment and restrain an execution. In this attempt they are met by the maxims: '*In pari delicto melior est conditio possidentis,*' and '*Nemo allegans suam turpitudinem audiendus est.*' There are cases, indeed (such as attempts to poison the fountains of justice, and others), where the public interests demand the overthrow and exposure of the scheme, that the particeps criminis may be used for that purpose. But this is not such a case, and the agreement being executed not executory, defendants are without remedy. The practice which has grown up in this and other counties in the western part of this state, of making use of judgment notes in lieu of promissory notes, for vendue notes, for discount paper in bank, and indeed for all ordinary business transactions, must if such practice becomes general over the state, lead the courts or the legislature to relax the rules as to defences thereto. But as yet ' There is no difference in legal effect between a judgment confessed, and a judgment on a verdict of a jury:" Hopkins *v.* West, 2 Norris 109. A judgment is an executed contract. " So long as a contract continues executory it may not only be impeached for fraud or mistake, but any illegality which would be a defence at law, would in general be ground for cancellation in equity; as for instance, the illegality of contracts for gaming or smuggling, or aiding prosecution for compounding a felony or for paying usury. But a contract already executed, cannot be set aside as illegal or immoral, and nothing but fraud or palpable mistake is ground for rescinding an executed conveyance:" Nace *v.* Boyer, 6 Casey 110. See also Hershey *v.* Weiting, 14 Wright

245; Blystone *v.* Blystone, 1 P. F. Smith 375, and Steinbaker *v.* Wilson & Young, 1 Leg. Gazette R. 76. Rule discharged."

The defendants in the judgment then took this appeal and alleged, that the court erred in refusing to open the judgment.

*John M. Thompson* and *W. D. Brandon*, for appellants.—The court refused to open this judgment on the ground, that although entered on a warrant of attorney it had the same effect as one entered on the verdict of a jury. We contend, it has not the same sanctity.

The original consideration being illegal, forbidden by law, and against public policy, the note was void. Its collection by law would be a legal wrong. Entering judgment did not remove the taint, nor deprive the court of the power to prevent the commission of an outrage. The judgment thus entered continued under the control of the court, and as subject to its order as the note was. Filing the note simply made a record of what was before a private paper. A deed or mortgage recorded, is still under the power of the proper court, and upon sufficient cause shown, it can be reformed or destroyed as the justice of the case may require. Entering judgment on this note, was filing or recording it in the office of the prothonotary—nothing more. When a judgment is opened on terms that the case be tried on its merits, it does not preclude the defendant from showing that the bond sued on is invalid: Bradley *v.* Commonwealth, 7 Casey 522; Cochran *v.* Eldridge, 13 Wright 365; Dorney *v.* Mertz, 8 Phila. 553. A contract which has for its object the performance of an act, which is prohibited by express statute, or the commission of which incurs a penalty, is as much illegal and void, as if the statute in express terms had declared it to be so: Territ *v.* Bartlett, 6 Wash. (Vt.) 148. A note given in consideration that the obligee shall stop a prosecution which he had instituted against the obligor for an alleged felony, and that he would not appear as a witness therein, is not binding: Swan *v.* Chandler & Philips, 8 B. Monroe 98. See also Ham et al. *v.* Smith, 6 Norris 63.

*John M. Greer*, for appellee.—There is no difference in legal effect between a judgment confessed or for want of an appearance o · plea, and a judgment on the verdict of a jury: Hopkins *v.* West, 2 Norris 109.

We have found no case parallel to this reported, the nearest approach being that of Ham et al. *v.* Smith, *supra*, but there is one very important distinction between the two cases. In the case of Ham et al. *v.* Smith, the judgment had been opened by the consent of parties. This certainly threw the action upon the plaintiff, and there gave the appellants the same defence they would have had, had the suit been brought upon a common note

or bond, and the plaintiff must in that event prove his case as on a new trial.

The settlement of a prosecution for assault and battery, is a valid consideration for a contract: Castner v. Cornell, 1 Luzerne Obs. 58; Bushworth v. Dwyer, 1 Phila. 26. The compounding of a prosecution for obtaining goods by false pretence is not forbidden by law, and a note given on such consideration is valid: Steinbaker v. Wilson, *supra*. The parties defending against the note, admit that they were as active in bringing about this settlement as Mr. Dorsey, and if any crime was committed, they are equally guilty. A note is given, a judgment confessed, an execution issued, a levy made, and the contract executed. Will the court now step in and save a party whose only defence is, as they themselves represent it, that they had done wrong?

Mr. Justice Trunkey delivered the opinion of the court January 5th 1880.

The maxim, "*Nemo allegans suam turpitudinem audiendus est,*" is good in its use, and the authority of a long line of decisions prevents its abuse. In Collins v. Blantern, 2 Wils. 341, a leading case, it was decided that illegality may be pleaded as a defence to an action on a bond, and so it has been held in England and this country ever since. The bond in that case was given as an indemnity for a note entered into by the obligee for the purpose of inducing a prosecutor of an indictment for perjury to withhold his evidence. After speaking of the transaction as one to gild over and conceal the truth, the court said, " This is an agreement to stifle a prosecution for wilful and corrupt perjury, a crime most detrimental to the Commonwealth; for it is the duty of every man to prosecute, appear against and bring offenders of this sort to justice." " This is a contract to tempt a man to transgress the law, to that which was injurious to the community; it is void by the common law, and the reason why the common law says such contracts are void is for the public good." Had the defendant not been heard the court would have known nothing of the facts; they were not set out in the bond, the plaintiff was not compelled to show them in making out his case, and on the face of the bond he was entitled to recover; all that which proved it a void contract was shown by the defendant. So in the late case of Ham et al. v. Smith, 6 Norris 63, the corrupt, immoral and forbidden contract appeared in the proofs adduced by the defendants; the plaintiff made his case by showing the note, the fair-looking fruit of the illegal bargain. Notwithstanding the maxim, it has been settled that when a contract or deed is made for an illegal purpose, a defendant against whom it is sought to be enforced, may show the turpitude of both himself and the plaintiff, and a court of justice will decline its aid to enforce a contract thus wrongfully entered

into. The principle depends on the public good, not on the merit of the defendant, whose hand is as foul as the plaintiff's. Public policy requires that he be heard, and if the contract be void, his relief is an incident. Swan *v.* Scott, 11 S. & R. 155, is no exception. There the suit was on a bond, given in satisfaction of an award of arbitrators, which had become a judgment; and the defendant proposed to go behind the judgment and show the illegal contract on which the award was obtained. *Held,* that he could not, and DUNCAN, J., remarked, " The test, whether a demand connected with the illegal transaction is capable of being enforced at law is, whether the plaintiff requires the aid of the illegal transaction to establish his case." It is manifest the judgment was conclusive, though obtained in a suit on an illegal contract, and the remark strictly fitted the facts in that case, without infringing on the rule. Wherever that test has been quoted and applied, it will be found there was a good consideration for the contract in suit before reaching back to the alleged illegal one.

Where the public is not interested, the maxim has its full force, and the law leaves the parties as they placed themselves. Obligors in an instrument under seal, made for the purpose of defrauding the obligee's wife, cannot shield themselves by alleging their own fraud; for this does not belong to the class of contracts forbidden by statute or public policy: Evans *v.* Dravo, 12 Harris 62; Hendrickson *v.* Evans, 1 Casey 441. On like principle, voluntary conveyances and contracts made to defraud creditors, though void as to them, are good and binding between the immediate parties. These are avoided by the statute of 13 Elizabeth, for the benefit of creditors, but not as to the parties: Hershey *v.* Weiting, 14 Wright 240; Blystone *v.* Blystone, 1 P. F. Smith 373. "That a collusive contract binds the parties to it is a principle which commends itself no less to the moralist than to the jurist; for no dictate of duty calls on a judge to extricate a rogue from his own toils." Stewart *v.* Kearney, 6 Watts 453. In all such cases the actor is met by the maxim, "*In pari delicto melior est conditio possidentis.*"

Forgery, or the *crimen falsi,* is an infamous offence. It is classed with other infamous felonies and misdemeanors, the compounding of any of which is a misdemeanor punishable by fine and imprisonment: Act March 31st 1860, sect. 10, Pamph. L. 387. Under section 9 of the Criminal Procedure Act of 1860, Pamph. L. 432, no magistrate or court can lawfully permit a settlement of a prosecution for forgery, on satisfaction being made to the party complaining, for infamous crimes are excepted from its operation. The legislature committed no such inconsistency as enacting two acts of the same date, one of which prohibits the settlement of forgery under a severe penalty, and the other authorizing it, if the complaining party acknowledges satisfaction.

[Bredin's Appeal.]

Cheats by false pretences are among the cases authorized to be settled by the 9th section of the Criminal Procedure Act, and therefore, Steinbaker v. Wilson & Young, 1 Leg. Gaz. 76, has no application to the question now pending. And the settlement of cases within that section is not touched by the principles applicable to the compounding of an infamous crime.

Dorsey charged McCullough with forgery, and conducted the prosecution to his indictment and acquittal. After the indictment and before the acquittal, a bargain was struck, the judgment-note given, Dorsey's claim against McCullough satisfied, and Dorsey was not to appear and testify in the forgery case. He saw the Commonwealth fail, for he did not answer to testify, though present. It cannot be doubted that the abandonment of the prosecution and failure to testify entered into the agreement. The note was given for the debt and for the acquittal—neither promise nor consideration is divisible. If any part of an indivisible promise, or any part of an indivisible consideration for a promise, is illegal, the whole is void: Filson v. Himes, 5 Barr 452.

Agreements founded upon the suppression of criminal prosecutions are void; they have a manifest tendency to subvert public justice: 1 Story Eq., sect. 294. It is the nature of the crime, not so much whether it be felony or misdemeanor, which is to be considered. Many felonies are not so enormous as some misdemeanors. The law recognises this in their punishment. For instance, the maximum of imprisonment for one convicted of forgery is ten years, of larceny three. Stifling a prosecution for forgery, though an offence of same grade as compounding divers felonies, seems to be a graver offence than compounding some felonies. It comes within the rule, that where the welfare of society and the vindication of the law are the chief objects, the defendant may give in evidence the illegality of the contract as a bar to a suit to enforce it; and this to prevent the evil which would be produced by enforcing the contract or allowing it to stand. Shall these objects be thwarted, and the evil follow which the law designs to prevent, because of a judgment confessed by virtue of a warrant which is but a part of the criminal transaction?

It was said by the present Chief Justice in Hopkins v. West, 2 Norris 109: "There is no difference in legal effect between a judgment confessed, or for want of appearance or plea, and a judgment on the verdict of a jury. The court in which the judgment is rendered will indeed open one of the former kind, and let the defendant into a defence in a proper case and upon equitable terms." In Pennsylvania it has always been the right of a defendant in a judgment confessed by virtue of a warrant of attorney to petition that it be opened for cause. This right was so well respected by the courts that there was no occasion for legislation providing for appeal from refusal to open till a recent date. The entry of judg-

[Bredin's Appeal.]

ments, either by attorneys or prothonotaries, on judgment-notes, is very common. These though having the same effect as if on the verdict of a jury, while they stand, in fact, never were the results of adjudication. To hold that such a judgment entered on an immoral and illegal obligation, part of a transaction subversive of public interests, shall be deemed an executed contract, with absolute right in the plaintiff to judicial process for collection, would be shocking to every man's sense of justice. The argument is that the judgment shall stand, for the plaintiff need only show the note, and the defendant, as actor, will not be heard alleging his own and the plaintiff's turpitude in an application for opening the judgment. In one sense the plaintiff is an actor—he caused confession of judgment on the void instrument, and uses the process of the law to collect the money agreed to be paid for its violation. The reason of the rule which allows a defendant to plead and prove the illegality of a contract in bar of a suit upon it, demands that he be heard in an application to open a judgment so confessed. His rights are of secondary importance, and he is not heard for their vindication. It is the duty of the court, on proper showing, to open such a judgment, to the end that there may be a trial as if suit had been originally commenced on the note or other obligation on which the judgment was entered. In this way the law may be vindicated and the interest of the Commonwealth conserved.

> The order and decree discharging the rule to show cause why judgment should not be opened, reversed, and now the said rule is made absolute; the record to be remitted for further proceedings. Appellees to pay costs of this appeal.