# Campbell v. Beaman, Appellant.

*Corporations—Failure to record charter—Liability of incorporators—Sale of lots—Gambling contract—Statute of limitations.*

Where a number of persons are granted a charter for a real estate company, and the company purchases land subject to a mortgage, and after having divided the land into lots and sold the lots to different purchasers under agreements to pay the purchase-money on installments, suffers the mortgage to be foreclosed, and loses the title, the incorporators may be held personally liable for the installments paid, if it appears that they failed to record the charter of the company in the proper county until seven years after the date of the charter. The statute of limitations begins to run in favor of the defendants only from the date of the recording of the charter.

In such a case a corporation, which had been one of the original incorporators, but not included as a defendant when the suit was brought because of plaintiff's ignorance of the circumstances, may be brought in as a party defendant by amendment with leave of the court.

An agreement will not be construed a gambling contract where a real estate company which has sold lots to various purchasers, on installment payments, agrees that the location of the different lots shall be designated at a meeting of the purchasers after sixty per cent. of the purchase-money of all lots had been paid, at which time the company agreed to distribute the sum of ten thousand dollars in various amounts, according to a schedule attached to the agreement, in which the lots were designated by numbers with the amount which each was to receive in the drawing. Where the company permits a mortgage to be foreclosed and loses its title to the land, and the purchasers bring suits to recover the installments of the purchase-money which they had paid, the company cannot allege as a defense that the contract was of a gambling character.

30, (1917).]          Statement of Facts.

Argued Nov. 23, 1916.  Appeal, No. 288, by defendant, from judgment of C. P. Bradford Co., Dec. T., 1910, No. 115, for plaintiff on case tried by the court without a jury in suit of E. S. Campbell v. J. W. Beaman et al.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.  Affirmed.

Assumpsit to recover back installments of purchase-money paid for a lot of ground.

The case was tried by the court without a jury.

JOHNSON, P. J., specially presiding found as follows:

### FINDINGS OF FACT.

First:  On April 7, 1903, on application of E. F. Herrick, M. L. Case, L. T. Hoyt, G. M. Clark, B. T. Hale, J. Roy Lilley and J. W. Beaman, the Sayre & Athens Real Estate Company was duly incorporated under the laws of the State of Pennsylvania, for the purpose of holding, leasing and selling real estate.  But the plaintiff was unaware of the fact that the said company was incorporated.

Secondly:  After the incorporation of the said company, to wit, about July 1, 1903, said company was duly organized and shares of stock were issued respectfully to the following:  E. F. Herrick, L. T. Hoyt, B. T. Hale, J. Roy Lilley, G. M. Clark, J. G. Pratt, H. M. Turner, J. W. Beaman, David J. Fanning, M. L. Case, Carpenter & Pierce, and the Athens Realty and Investment Company, and on March 15, 1910, the charter of said company was recorded in the recorder's office of Bradford County.

Thirdly:  On or about July 1, 1903, the Sayre & Athens Real Estate Company purchased a lot of land situate in the Borough of Athens, Bradford County, Pennsylvania, of about sixty-five acres and plotted the same for the purpose of sale into four hundred and twenty lots.

Fourthly:  On or about September 30, 1903, the said

company entered into a contract with the plaintiff relating to the lots that had been so acquired and plotted, said contract purporting to vest in the plaintiff a right thereafter to acquire a lot on said plot, the location of which said lot was to be afterward determined by a drawing, when sixty per cent. of the purchase-price of all the lots on said plot had been paid to the said company, at which drawing there was to be distributed by chance by said company, among only some of the contracting parties with said company the sum of ten thousand dollars.

Fifthly: Plaintiff made payments to the said company upon the contract referred to, as follows: September 30, 1903, $10; October 17, 1903, $5; November 13, 1903, $5; December 11, 1903, $5; January 20, 1904, $5; February 20, 1904, $10; April 25, 1904; $10; July 12, 1904, $5; August 16, 1904, $5; February 20, 1905, $10; April 15, 1905, $5; a total of $75.

Sixthly: On October 19, 1907, plaintiff was notified that the defendants were unable to carry out their contract. Sixty per cent. of the purchase-price of all said lots on said plot was never paid to the said company, and no drawing or selection of lots was made. On March 29, 1910, the plaintiff repudiated his contract and demanded back the money which he had paid.

Seventhly: This suit was brought by the plaintiff against the defendants, Joseph W. Beaman, Gilbert M. Clark, Benjamin T. Hale, E. F. Herrick, Louis T. Hoyt, David J. Fanning and J. Roy Lilley on the 6th day of October, 1910, but the Athens Realty and Investment Company, a corporation, one of the defendants, was brought in as a party defendant, by leave of court, by amendment, and the issuance of an alias summons on March 25, 1912, the plaintiff not being aware at the beginning of the suit that the Athens Realty and Investment Company was a stockholder in the Sayre & Athens Real Estate Company.

Eighthly: The amount paid by plaintiff is $75; the

interest thereon from March 29, 1910, is $27.98; the total amount due is $102.98.

From the foregoing facts we arrive at the following

## CONCLUSIONS OF LAW:

First: The contract of Sept. 30, 1903, between the plaintiff and the Sayre & Athens Real Estate Company is a gambling contract and therefore illegal and void.

Secondly: But there was a locus pœnitentiæ before the consummation of the transaction and after the defendants notified the plaintiff of their inability to carry out their contract, and the plaintiff, on March 29, 1910, demanded back his money, his right to recover the same in an action at law became complete.

Thirdly: The Athens Realty and Investment Company, a stockholder in the Sayre and Athens Real Estate Company, having been made a party defendant in this action by amendment of the pleadings after the institution of the suit by leave of court and by an alias summons, became in effect a party defendant from the beginning of the suit.

Fourthly: The charter of the Sayre and Athens Real Estate Company, not having been recorded until March 15, 1910, after the said payments were made by the plaintiff and the incorporation of the said company having been unknown to the plaintiff, the stockholders of the Sayre and Athens Real Estate Company became liable to the plaintiff as partners.

Fifthly: The statute of limitations began to run against the plaintiff's claim March 29, 1910, the locus pœnitentiæ, when the plaintiff demanded back his money and his right to recover the money paid by him became complete, and the statute is therefore no bar to any of the plaintiff's claim for money paid.

Sixthly: The plaintiff is entitled to recover in this action the money paid, to wit, $75, and interest thereon

Statement of Facts—Opinion of the Court. [68 Pa. Superior Ct.

from March 29, 1910, amounting to $27.98; or a total sum of $102.98.

DISCUSSION.

The contract was a gambling transaction and therefore illegal: 14 Am. & Eng. Ency. of Law 583; Seidenbender v. Charles, 4 S. & R. 151, but the plaintiff repudiated his agreement, as he has a locus pœnitentiæ, and claimed his money: 9 Cyc. 554; Peter v. Grim, 149 Pa. 163; Knowlton v. Empire Spring Company, 103 U. S. 49.

The Athens Realty & Investment Company, having been joined with the defendants in the suit by amendment and by alias summons duly served, is affected, as if included and served at the institution of the suit: Taylor & Fitzsimmons v. Henderson, 17 S. & R. 453; Magaro v. Clark, 6 Watts 528; McClurg v. Fryer & Anderson, 15 Pa. 293; Wann v. Pattengale, 14 Pa. 313; Bickel's App., 86 Pa. 204; Curcier's Est., 28 Pa. 261.

We doubt whether defendants can avail themselves of the statute of limitations; but, in any event, the statute did not begin to run before the locus pœnitentiæ and demand for the money. No right to sue accrued before the locus pœnitentiæ and the statute does not run before the right to sue accrues.

And now, June 19, 1916, judgment is entered for the plaintiff for $102.98, unless exceptions are filed hereto within thirty days as provided by law.

*Error assigned* was the judgment of the court.

*T. S. Hickok,* with him *W. G. Schrier, Wm. P. Wilson* and *David J. Fanning,* for appellants.

*D. C. DeWitt,* for appellee.

OPINION BY ORLADY, P. J., October 8, 1917:

The Sayre and Athens Real Estate Company pur-

chased sixty-five acres of land, and plotted them into 420 lots, to be offered for sale. A number of persons entered into written contracts with the company for the purchase of a lot, all the contracts being similar in form. Eleven of these purchasers brought suits in assumpsit to recover the purchase-money they had paid under these contracts, which in the court below were tried by a judge, without the intervention of a jury. He directed a judgment to be entered in each case in favor of the plaintiff. The defendants bring these appeals, and by an agreement of counsel, all were heard in a single argument. The judgment to be entered in each case will be based on the reasons given in this opinion. The facts are not in controversy, and may be briefly stated as follows:

On April 7, 1903, the defendants formed an association, to be incorporated as The Sayre and Athens Real Estate Company, for the purpose of holding, purchasing and transferring of real estate. Pursuant thereto, a charter was approved by the governor on that day. On July 1, 1903, an organization was effected; shares of stock were issued to the named defendants and the company engaged in its business operation. On September 30, 1903, a contract in writing, under seal, was entered into with Campbell, this appellee, the material parts of which, for the purpose of this case, are as follows: That the party of the first part (the real estate company) does hereby agree to sell to the second party (Campbell), his heirs, etc., one lot of land, on the tract or plot as surveyed by H. E. Bull, and recorded, etc. The location of said lot to be designated at a meeting of the purchasers of the lots upon said plot, said meeting to be called when sixty per cent. of the purchase-price of all of said lots has been paid, at which time and place the party of the first part agrees to distribute the sum of ten thousand dollars, among the purchasers of said lots, in accordance with a schedule hereto attached. On the reverse side of the contract there was printed a statement, viz: "The sums set opposite the following numbered

lots will be paid in cash to the respective purchasers thereof in accordance with the terms of the within agreement." Following this statement, was a scheduled list of forty-six numbered lots, with amounts set opposite, ranging from $2,000 to $50. The contract further provided "The second party does hereby agree to pay the first party for the lot of land aforesaid, the sum of $200, payable as follows, to wit: $10 upon the execution. of this contract, and the balance in weekly installments of $1 each, until the whole sum is paid with interest, with the privilege of paying before due," and, "Now if said second party, his heirs or assigns shall pay said purchase-money, together with the interest, as they shall become due, the said first party hereby agrees to make, execute and deliver unto the second party, a good and sufficient warrantee deed for the land aforesaid, etc." Pursuant to this contract, this plaintiff paid to the company, in amounts ranging from $5 to $10, the aggregate sum of $75, to date of April 15, 1905.

The sixty-five-acre tract purchased by the incorporators, and divided into the 420 lots was encumbered by their arrangement with a purchase-money mortgage which involved the whole property. On October 19, 1907, this plaintiff was notified, through a circular letter, issued to holders of lot contracts, by Joseph W. Beeman (the same person who signed the lot contracts, as "President" of the real estate company), viz: "Owing to a slump in the real estate market, coupled with the unwarranted action of one of the stockholders, the company is involved in some difficulty. The stockholder mentioned has transferred his mortgages against the company to an outsider, who is endeavoring to foreclose. This action has been resisted as contrary to agreement, and the result is still uncertain." The threatened danger culminated in a sheriff's sale of the property under foreclosure proceedings, which divested all title of the defendants to the lot in question, so that the terms of the contract could not be carried out by the vendor company.

No further payments were made after this date, and on March 29, 1910, notice of recision of the contract was given to the company, and a formal demand was made for the repayment of the purchase-money that had been paid, with interest thereon. This suit was brought October 6, 1910, and on March 7, 1912, an amendment was rightly allowed by the court, by adding the Athens Realty and Investment Company, a corporation, as a party defendant; and alias summons was issued and service thereof accepted on March 27, 1912. The form of action was not changed, and the overlooked partner became in effect a party defendant as from the beginning of the suit. The special defense of the statute of limitations is without merit, as the partial payments of the purchase-money were made in accord with the plan designed by the company, and the right of action under the facts as to this particular defendant accrued at the same time as with the others. The record clearly shows that the investment company and D. J. Fanning were identified with the defendants in the creation of the real estate company. The charter of The Sayre and Athens Real Estate Company was not placed on record until March 10, 1910, and the act of incorporation was not complete until that date. This was long after all the purchase-money claimed in this action had been paid to the company. So manifest a disregard of a statutory requirement, intended for the protection of the incorporators as such, is not within the letter or spirit of the Act of March 15, 1911, P. L. 17, as, "an act, transfer or conveyance of property" to validate and make effectual, such an omission of duty, on the part of the incorporators, to the injury of innocent parties. Such a neglect, cannot be held to have been done in good faith, when in the contract they twice designate their association as "a company" sign and seal it as such, and nowhere suggest that it is a corporation. As stated by Chief Justice STERRETT, in Guckert v. Hacke, 159 Pa. 303, "It is plain, even from a cursory reading of the Act of April 29, 1874,

P. L. 73, that recording of the certificate 'in the office for the recording of deeds, in and for the county where the chief operations are to be carried on' was intended to be made one of the conditions precedent to corporate existence. That was the last of successive steps required to be taken, and the right to begin the transaction of corporate business was made to depend upon the taking of that step. One of the purposes of the act being exemption from personal liability in the transaction of business, it is obviously material that the public should have notice, and notice by record was accordingly prescribed." Stephenson v. Dodson, 36 Pa. Superior Ct. 343; Pinkerton v. Penna. Traction Co., 193 Pa. 229; Tonge v. Item Publishing Co., 244 Pa. 417; Schmitt v. Potter Trust Co., 61 Pa. Superior Ct. 301; Edwards v. Tracy, 62 Pa. 374. The plaintiff did not deal with the defendants as a corporation, and the court below found as a fact that this plaintiff was unaware of the fact, that the company was incorporated, or that the investment company was a stockholder therein. Exemption from personal liability did not begin until March 10, 1910, when the charter was recorded. The sole cause of trouble was the defendants' failure to carry to a conclusion their proposition, and when informed of their inability to perform their part of the contract, the plaintiff made his proper demand for the repayment of the purchase-money. The effect of a party's act in voluntarily disabling himself from performing his contract is the same as if he had repudiated it. In this case all parties treated the contract as rescinded on account of impossibility of performance by the defendants.

We find nothing of a gambling nature in the original contract, and from the facts it is manifest, that it was not intended in the slightest degree to be unlawful or deceptive, or that the defendants knowingly associated themselves in an undertaking of doubtful probity.

However, if this be the wrong view to take of the facts, it is sufficient for this case to refer to Bredin's App., 92

Pa. 241, and Allebach v. Hunsicker, 132 Pa. 349, to demonstrate the futility of such defense, in contending that the contract was illegal and void as a gambling or void one. The controlling purpose of the company was to sell the plotted lots at $200 per lot, each being treated as of equal value; the exact relation of each lot to the others, was to be determined at a meeting of the purchasers when sixty per cent. of the purchase-price of all the lots had been paid in; the defendants were not to participate in that meeting, and could not have a voice therein. The prize money was nothing more than a premium or bonus in the hands of a volunteer, for the ascertainment of something by others, over which they had no control. As it takes two parties to make a bargain, so it takes two intentions to make a gambling transaction : MacDonald v. Gessler, 208 Pa. 177. The enterprise failed, not on account of any intention or act of the plaintiff. The only reason suggested, was the failure of the defendant to protect the title, and allowing it to be destroyed under foreclosure proceedings under a mortgage they created. A contract to give a prize or premium is not regarded as immoral or illegal unless prohibited by statute, 6 R. C. L. 779, and is not a gambling contract: 14 A. & E. Encl. of L. 584-614. The mistake in judgment as to prospective values does not even suggest bad faith or illegal practices. The alluring offer to distribute prizes, premiums or a bonus, may have stimulated sales as a puffers promise, but that fund is not sought by this plaintiff. He asks only to be repaid the money he was induced to pay the defendants on the faith of their promise that he would secure title to a lot in the plotted plan. There is no suggestion in the contract of a chance or drawing to determine the number or location of his lot. The plaintiff was entitled to his deed whether or not he might be entitled to the scheduled bonus. The purchasers could organize their meeting and adopt any methods they might decide upon to designate the lot numbers that would be entitled to the premiums. The only duty of the

defendants in such an event, would be to pay the prize money in accordance with the designation made by the lot owners' meeting.

The statute of limitations does not begin to run until the cause of action has accrued, and in this case no action could be maintained until the admitted notice of the defendant's default on October 19, 1907. To that date the project was a going concern, and the plaintiff had the right to rely on the defendant's agreement "to make, execute and deliver a good and sufficient warrantee deed for the land." Finkbone's App., 86 Pa. 368; Cook v. Carpenter, 212 Pa. 165; Gardner's Est., 228 Pa. 282.

For the reasons given herein, the judgment in each appeal is affirmed.