### R & R Trucking Co., Appellant, *v.* Lewis Steel Products Corp.

Argued November 18, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Don F. D'Agui,* with him *Anthony Sidari, Albert Ring,* and *D'Agui and Del Collo,* for appellant.

*Martin D. Cohn,* with him *Laputka, Bayless, Ecker & Cohn,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 20, 1967:

The plaintiff, R & R Trucking Co., Inc., and Lewis Steel Products Corp., defendant, entered into a written lease agreement whereby the plaintiff leased various motor vehicles to the defendant. Attached to the agreement were eleven schedules, each referring to one of the vehicles to be leased. Each schedule represented a separate agreement pertaining to the truck involved, the schedule to run for a term of three years from the date of execution of the schedule and to be automatically renewed for an additional three year term unless written notice of termination was given 30 days prior to the expiration of the then existing term. Rental for each of the motor vehicles was set at $175 per week. In addition to payment of the rental, the lessee, Lewis Steel Products Corporation was to pay salaries, wages, social security tax, workmen's compensation for the drivers and to provide public liability insurance.

The agreement provided that if the lessee breached any of its provisions, all rentals for the entire unexpired balance of the current term due on each of the schedules and all other charges which the lessee had agreed to pay plus any arrearages were to become due and payable at once. The plaintiff was empowered to confess judgment against the lessee in any court of record in Pennsylvania.

The agreement was dated January 29, 1960. On March 13, 1964, the lessor, R & R Trucking Co., Inc., alleging default in the defendant's commitments, entered judgment against the defendant lessee in the amount of $266,164.60. The lessee then petitioned the Court of Common Pleas of Luzerne County to open the judgment asserting that (1) immediately after the exe-

cution of the contract the parties abandoned the contract's terms and thus waived the provisions thereof; (2) the purpose of the execution of the contract was to avoid the applicable rules of the Interstate Commerce Commission and the Pennsylvania Public Utility Commission; (3) the January 1960 agreement was rescinded by mutual agreement in January of 1964 and substituted by a new informal agreement which also was later rescinded; and (4) the agreement of January 1960 called for damages which were penal in character.

The court, after hearing argument and considering defendant's depositions, granted the petition to open the judgment and made absolute the rule granted thereon. The plaintiff lessor appealed to this Court.

It is the plaintiff's contention that the court below abused its discretion in opening the judgment, arguing that (1) the defendant's testimony in depositions did not support the allegations of its petition; (2) the defendant failed to present a valid defense to the action or to show equitable reason why judgment should be opened; and (3) that, in any event, as the agreement was to circumvent the rules and regulations of the Interstate Commerce Commission and Pennsylvania Public Utility Commission and therefore illegal, the court should not lend its aid to the defendant in such an illegality.

With regard to this last contention of the plaintiff, it is to be noted that it is the plaintiff who is seeking the enforcement of what he himself states is an illegal contract. This Court stated in *Bredin's Appeal*, 92 Pa. 241 at 248: "To hold that such a judgment entered on an immoral and illegal obligation, part of a transaction subversive of public interests, shall be deemed an executed contract, with absolute right in the plaintiff to judicial process for collection, would be shocking to every man's sense of justice. The argument is that the judgment shall stand, for the plain-

tiff need only show the note, and the defendant, as actor, will not be heard alleging his own and the plaintiff's turpitude in an application for opening the judgment. In one sense the plaintiff is an actor—he caused confession of judgment on the void instrument, and uses the process of the law to collect the money agreed to be paid for its violation. The reason of the rule which allows a defendant to plead and prove the illegality of a contract in bar of a suit upon it, demands that he be heard in an application, to open a judgment so confessed. His rights are of secondary importance, and he is not heard for their vindication. It is the duty of the court, on proper showing, to open such a judgment, to the end that there may be a trial as if suit had been originally commenced on the note or other obligation on which the judgment was entered. In this way the law may be vindicated and the interest of the Commonwealth conserved."

We said further at page 247: "It comes within the rule, that where the welfare of society and the vindication of the law are the chief objects, the defendant may give in evidence the illegality of the contract as a bar to a suit to enforce it; and this to prevent the evil which would be produced by enforcing the contract or allowing it to stand. Shall these objects be thwarted, and the evil follow which the law designs to prevent, because of a judgment confessed by virtue of a warrant which is but a part of the criminal transaction?"

In the earlier case of *Ham v. Smith*, 87 Pa. 63, the court had opened judgment on a note and at the ensuing trial the defendant sought to show the illegality of the consideration behind the judgment note. The trial court ruled out such evidence and a verdict for the plaintiff resulted. On appeal, we reversed, saying: "That this whole transaction was, therefore, corrupt, immoral and within the prohibition of the act of 18th of April 1874, is not doubtful. To cite authority to

prove that courts should not lend their aid to enforce contracts, such as this, would be spending time to no purpose, since no one doubts it. But it is said the contract has been executed, and, therefore, the courts will not interfere. The law is, undoubtedly, well stated if the fact were so. But the contract has not been executed, and the court is now required to lend its aid for the purpose of its execution. Judgment is asked upon the note, and the proof shows the note to be part of an illegal and void contract; how, then, can the court enforce it? As was said by Mr. Justice AGNEW, in answer to an argument similar to the above, in the case of Morris Coal Coal Co. v. The Barclay Coal Co., 18 P.F. Smith 188, 'When a bill, note or bond is but an instrument to execute an illegal contract, it is tainted by the illegality and cannot be recovered. The illegal consideration enters directly into the instrument, and is followed up because the law will not permit itself to be violated by mere indirection.'

"Were the doctrine otherwise, every illegal contract, however much opposed it might be to public morality or even to common decency, might be readily and securely covered from judicial inquiry by the mere interposition of a note or bond. Were it only a question between the parties we might leave them to the consequences of their own contracts, but it is not so; it extends further and involves the public welfare, and we certainly know that the best way to suppress any public vice is to make it unprofitable."

Therefore, if the intent of the parties to the 1960 agreement was to circumvent by improper means the rules and regulations of the Interstate Commerce Commission and the Public Utility Commission, not only is the plaintiff precluded from raising such illegality as a bar to the defendant's opening of the judgment, but the illegality could be presented by the defendant as a defense to the execution of the judgment confessed

thereunder. It was incorrect, therefore, for the court below to conjecture that the illegal intent "standing alone" would probably defeat the defendant's right to have the judgment opened.

The court did find however that "While it is true that the intent to 'circumvent or get around the I.C.C. Regulations' was an improper one, nevertheless, even without that, we believe that there is sufficient evidence to sustain the defendant's position." After reviewing the pleadings and the testimony presented by defendant (plaintiff chose to submit no testimony except by way of cross-examination), the court concluded that the testimony was sufficient to allow a jury to find that the parties never did observe the terms of the 1960 agreement; that on the contrary they operated under an oral agreement completely different from the written one; and thus they mutually and orally rescinded the contract. Our review of the record leads us to the same conclusion. As stated in the recent case of *Nadolny v. Scoratow*, 412 Pa. 488, at 491: "Where the petition to open judgment is granted no abuse of discretion will be found if, upon submission of petitioner's defenses to a jury, a verdict in his favor could be upheld."

The evidence in this case was more than sufficient to sustain a jury's finding that the contract upon which the judgment had been confessed had been rescinded by the parties long before the confession and therefore, was no longer in full force and effect between them.

Order affirmed; each party to bear own costs.